**NOT FOR PUBLICATION**

```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

DAVID MILLS,                   :
                               :  Civil Action No. 04-6251 (FLW)
          Petitioner,          :
                               :
     v.                        :  **OPINION**
                               :
WARDEN JOHN NASH,              :
                               :
          Respondent.          :

**APPEARANCES:**

Petitioner pro se              Counsel for Respondent
David Mills                    Dorothy J. Donnelly, Esq.
FCI Fort Dix                   Asst. U.S. Attorney
P.O. Box 7000                  402 East State Street
Fort Dix, NJ 08640             Room 430
                               Trenton, NJ 08608

**WOLFSON**, District Judge

   Petitioner David Mills, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.  The sole respondent is Warden John Nash.

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
   (a) Writs of habeas corpus may be granted by
   the ... district courts ... within their
   respective jurisdictions ...
   (c) The writ of habeas corpus shall not
   extend to a prisoner unless- ... (3) He is in
   custody in violation of the Constitution or
   laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I. BACKGROUND[2]

Petitioner is currently incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey, serving a 70-month term of imprisonment imposed on January 15, 2003, by the United States District Court for the Eastern District of New York.

On March 15, 2004, Petitioner was removed to the Special Housing Unit as a result of an incident report charging him with refusing an order of any staff member. This removal from the prison community required an inventory of his personal effects. In connection with that inventory, Correctional Officer J. Bearden found a soda bottle containing a small amount of liquid, inside a cooler or thermos in Petitioner's locker. Officer Bearden turned the bottle over to Lieutenant Beverly Brown, who tested the liquid for alcohol content with an Alco-Sensor III.[3] The Alco-Sensor gave a reading of .24 and rising, positive for intoxicants. Officer Bearden then wrote an incident report charging Petitioner with possessing intoxicants.

---

[2] The material facts are not in dispute, except as otherwise noted.

[3] An Alco-Sensor III is a device designed to measure the level of alcohol in a liquid. A reading of .02 or higher represents a positive result for alcohol. See Smith v. Menifee, 2003 WL 1872668 (S.D.N.Y. April 10, 2003).

Petitioner was given notice of the charge and a hearing followed.  At the hearing, Lieutenant Brown's statement regarding the Alco-Sensor III test results was submitted and considered by the hearing officer.  Petitioner admitted possession of the bottle, but stated that it contained the spoiled remnants of a protein drink made of honey, bananas, raw peanuts, oatmeal and milk.  There is a dispute as to whether Petitioner requested Lieutenant Brown as a witness at the hearing.

The Disciplinary Hearing Officer found that Petitioner had possessed intoxicants in violation of Code 222, Making, Possession or Using Intoxicants, as set forth in Program Statement 5270.07, Inmate Discipline.  The sanctions imposed were 30 days segregation and loss of 87 days of good conduct time.  This sanction falls within the permitted sanctions for a violation of Code 222.

Petitioner has exhausted his administrative appeals.  He brings this Petition for writ of habeas corpus alleging that there is not sufficient evidence in support of the Hearing Officer's findings.  Petitioner contends that there should have been laboratory analysis of the liquid, rather than reliance on the Alco-Sensor III.  He contends also that he should have been allowed to call Lieutenant Brown as a witness.  Petitioner seeks restoration of his good-time credits.

## II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## III.   ANALYSIS

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972);

Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[4] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure

---

[4] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[5] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66.

---

[5] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985).  "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  Id. at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  Id. at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[6]

Here, Petitioner alleges two defects.  He alleges that he was denied the right to call witnesses and he contends that there is not sufficient evidence to support the finding of the Disciplinary Hearing Officer that he possessed intoxicants. Petitioner fails as to both allegations.

Petitioner states here that he requested Lieutenant Brown as a witness at the hearing, because he had explained to her (and

---

[6] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

she understood) that the liquid was merely a spoiled protein drink, not an intoxicant.  However, the Discipline Hearing Officer Report reflects that Petitioner did not request any witnesses.  In addition, the administrative appeal record does not contain any claim that a request for witnesses was denied.  To the contrary, the administrative appeal record contains Petitioner's statement that, "I didn't call Lt. Brown as a witness because I thought this would get thrown out.  I was found guilty.  I would now like to use her as a witness in this appeal."  Accordingly, the Court finds that Petitioner did not request any witnesses at the hearing.

With respect to the sufficiency of the evidence, it is clear that the findings of the Disciplinary Hearing Officer are supported by "some evidence."  The liquid was tested by a device designed to measure alcohol content of a liquid.  Petitioner has not suggested that the device is not suited to that task, that there was any defect in the device used in this instance, or that the device was not used properly.  Nor did Petitioner contest the test results at the hearing or in his administrative appeals; instead, he argued only that he had not intended to make an intoxicant.  Under the circumstances, it was appropriate for the DHO to rely on the results of the Alco-Sensor III test.  Petitioner has not suffered any due process deprivation.

IV. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

s/Freda L. Wolfson  
Freda L. Wolfson  
United States District Judge

Dated: February 27, 2006